## APPEAL OF DILLING COTTON MILLS.

Docket No. 1794. Submitted April 17, 1925. Decided June 23, 1925.

A taxpayer which, owing to a change in business conditions, discards certain machinery and equipment in 1918, is entitled to deduct from gross income in its tax return for that year the difference between the depreciated cost of the machinery and equipment discarded and the salvage value thereof.

*E. S. Parker, Esq.*, for the taxpayer.
*Benjamin H. Saunders, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

This appeal is from a determination of a deficiency in income and profits taxes for the year 1918 in the amount of $12,672.09. Only a

portion of this amount, alleged to be $10,940.50, is involved in this appeal.

FINDINGS OF FACT.

1. The taxpayer is* a North Carolina corporation which was organized in 1893 and commenced operations in 1894. Prior to 1918, it was operated as a weave and spinning mill for the manufacture of cotton cloth and was run by steam power. On account of the hydro-electric development through the territory in which the taxpayer was located, it found that it could buy electric power more cheaply than it could generate steam power and, accordingly, it electrified its plant in 1918. It also changed its plant from a combined weave and spinning mill to a spinning mill. In making the changes above indicated it abandoned the use of 2 engines and 4 boilers, junked 322 looms, 228 of which were equipped with Darby attachments, and 4 warpers. Upon the taxpayer's books of account, these assets were included in the plant account and no segregation of cost or value of such assets was possible. In 1918 the taxpayer charged off on its books, as a loss on account of the junking and discarding of the above-mentioned assets, $21,928.54, which amount was claimed as a deduction from gross income in the taxpayer's income-tax return for that year. In the audit of the return the Commissioner allowed a deduction from gross income on account of the loss on the junking and discarding of the assets of $6,918.95. In the year 1924 the taxpayer caused an appraisal of the discarded assets to be made by an appraisal company. In arriving at the amount of loss, the appraisal company estimated the depreciated cost of the assets in 1918 to be $24,601.75; the salvage value $4,401.80; and the loss $20,196.95. The deficiency in tax for 1918 appealed from is due entirely to the disallowance of $13,274 of the claimed deduction of $20,196.95.

2. During the year 1918 the amount realized from the sales of junk from the looms and warpers was $3,279.80. One of the engines abandoned in 1918 was sold subsequent to that year for $250 or $350, and the other for $650. Two of the four discarded boilers were sold subsequent to 1918 for about $200 or $300. The other two have been disconnected and no use has been made of them since the plant was electrified in 1918.

3. In its original return for 1918 the taxpayer estimated the accumulated depreciation upon the junked and discarded assets at 33 per cent of the estimated cost, and made certain estimates as to the salvage value of the discarded assets that had not been sold at December 31, 1918. The Commissioner estimated the accumulated depreciation on these assets in 1918 at 70 per cent of their estimated cost after making allowance for salvage value. An appraisal com-

pany determined the accumulated depreciation upon 150 of the looms acquired in 1894 at 45 per cent of their estimated cost, and of the looms purchased in 1900 at 35 per cent of their estimated cost. It also estimated the accumulated depreciation on an engine believed to have been purchased in 1897 at 40 per cent of the estimated cost, and on a boiler purchased in 1894 at 45 per cent of the estimated cost, and on two purchased in 1896 at 40 per cent of the estimated cost.

4. The taxpayer's books of account prior to 1910 or 1912 have been lost or destroyed, and it was impossible for the taxpayer to learn accurately the original cost of the machinery and equipment discarded.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, in accordance with Rule 50.

### OPINION.

Smith: The sole question presented by this appeal is the right of the taxpayer to deduct from gross income, in its tax return for 1918, $20,196.95 as a loss upon the discarding of 322 looms, 228 of which were equipped with Darby attachments, 4 warpers, 2 engines, and 4 boilers. After making an allowance for salvage value, the taxpayer claims that the loss actually sustained on the junking and discarding of the above-mentioned assets was $20,196.95, and of this amount the Commissioner has disallowed the deduction of $13,274.

That the taxpayer is entitled under the law to deduct from gross income in its 1918 tax return an amount for the junking and discarding of machinery and equipment is admitted by the Commissioner. He contends that the amount allowable as a deduction must be claimed under section 234(a)(4) of the Revenue Act of 1918, while the taxpayer claims that it is entitled to the deduction under section 214(a)(8). Inasmuch as section 214(a)(8) has application to individuals and not to corporations, it is apparent that the taxpayer intended to claim the deduction under section 234(a)(7) of the Revenue Act of 1918, which permits a corporation to deduct from gross income in its tax return "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

We think the taxpayer is entitled to claim the deduction under section 234(a)(7) of the Revenue Act of 1918. By reason of the development of hydro-electric power in the territory in which its plant was located, it became more profitable for it to operate by electricity than by steam. The boilers and engines which the taxpayer owned became to a large extent obsolete. The evidence is to

the effect that numerous other plants in the locality likewise changed from steam power to electric power, and as a result thereof there was very little demand for boilers and engines such as the taxpayer owned. By reason of this change in business conditions the taxpayer is entitled to claim a deduction for obsolescence in respect of the boilers and engines.

It also appears that it became more profitable for the taxpayer to operate a yarn mill than to operate a combined weave and spinning mill, which it had operated up to 1918. It therefore discarded its looms and warpers. The evidence shows that the looms were in fair condition and were doing good work. The books of account of the corporation for years prior to 1910 or 1912 had been lost or destroyed, and it was impossible for the taxpayer accurately to learn the original cost of the machinery and equipment discarded. It is in evidence, however, that loom frames depreciate very slowly, and that if looms are kept in proper repair and the attachments or parts of attachments are renewed as required the life of a loom is in many cases more than 40 years.

The estimate of the taxpayer as to the loss sustained by it upon the discarding of machinery and equipment in 1918 appears to have been made after a careful attempt to reach the depreciated cost of the assets discarded. We are disposed to give much weight to the evidence adduced relative to the estimate of value made by the officers of the taxpayer. The evidence supports the taxpayer's position that the depreciated cost of the assets discarded, less salvage value, was approximately $20,000. We think that the claim of the taxpayer to a deduction of $20,196.25 is not excessive, and it is allowed.